Memorandum. On the twenty-sixth day of January 1842, the Hon. Samuel Putnam resigned the office of Justice of this Court, which he had held since the first day of September 1814.

On the twenty-second day of February 1842, the Hon. Samuel Hubbard, of Boston, was appointed a Justice of this Court, in place of Mr. Justice Putnam, and took his seat upon the bench, on the first day of this term.

---

## Ebenezer Evans *vs.* The Commonwealth.

The provision in *St.* 1804, *c.* 143, § 7, that a person convicted of robbery " shall be punished by solitary imprisonment for *such term*, not exceeding two years," &c., is not void for uncertainty. It means *a term* not exceeding two years.

Under *Sts.* 1832, *c.* 73, and 1833, *c.* 85, which imposed additional punishment on convicts who had been discharged from former sentences, " in due course of law," it was sufficient to aver, in an information for such punishment, that the convict had been discharged from a former sentence, " in consequence of a pardon."

Where a demurrer to an information for additional punishment of a convict is overruled, re~~spondeat~~ ouster is not the necessary judgment, but judgment in chief may be rendered.

Four writs of error ; the first three to reverse judgments of the municipal court, and the other to reverse a judgment of this court, by which the plaintiff in error was sentenced to additional

punishment, on an information filed by the attorney for the Commonwealth. To that information, which was filed in the municipal court, at the February term 1835, the plaintiff in error demurred ; but the demurrer was overruled, and he was thereupon sentenced to additional punishment. He then appealed to this court, under a statute then in force, which allowed such appeal, and at the March term 1835, the court adjudged that the information was sufficient in law, and sentenced the appellant to solitary imprisonment five days, and to confinement afterwards to hard labor seven years in the state prison.

That information set forth three convictions of the plaintiff in error, and the sentences thereon. The *first* was a conviction at the April term 1816, of the municipal court, of the crime of larceny in a shop, in the night time, and a sentence to hard labor in the state prison for the term of two years ; and it was averred that this sentence was executed, and that the plaintiff in error was therefrom discharged, and that he departed from the state prison on the 3d of May 1818. The *second*, was a conviction at the July term of the municipal court, 1818, of the crime of robbery, and a sentence to the state prison for life ; and the information set forth that the plaintiff in error remained in said prison, " in execution of said sentence, until the 30th of May 1829, when he was discharged from said state prison, in consequence of a pardon granted to him by the supreme executive of the Commonwealth ; and, on said 30th of May, he departed from said state prison." The *third* conviction was of the crime of larceny in a shop, in the night time, and was had at the April term 1832, of the municipal court, and the sentence was three years' hard labor in the state prison.

The grounds on which these writs of error were brought, fully appear in the opinion of the court.

The arguments were had at the last March term.

*G. Bemis*, for the plaintiff in error.

*Austin*, (Attorney General,) for the Commonwealth.

SHAW, C. J. The first of these writs of error is brought to reverse a judgment of the municipal court, July term 1818, by which the prisoner, on being convicted of highway robbery, was

sentenced to solitary imprisonment for the term of ten days, and afterwards to confinement to hard labor in the state prison for life.

The error assigned is, that the court could not by law make solitary imprisonment any part of the punishment, and that the residue of the sentence to hard labor for life was erroneous, because it was necessarily dependent on the other erroneous sentence, and therefore fixed no certain time for its commencement.

This exception is founded upon the ground that the *St.* of 1804, *c.* 143, § 7, on which the conviction was had, was void for uncertainty. This argument rests on a very slight verbal inaccuracy in the terms of the statute providing for the punishment of highway robbery. The provision is, that any person, duly convicted, " shall be punished by solitary imprisonment for *such term*, not exceeding two years, and by confinement afterwards to hard labor for life." It is true there is nothing to which the term "such" can strictly apply. But it is impossible to mistake its meaning. It is equivalent to *a term*, or *the term of.* With a slight variation of expression, it would be free from grammatical inaccuracy ; though perhaps not the best chosen expression which could have been used : For instance, "for such term as shall not exceed," is equivalent in meaning, and not very different in expression from the term used in the statute.

We think a statute of such immense importance to the peace of society, and the safety of persons and property, is not to be adjudged void for uncertainty, on account of any slight inaccuracy of expression, when it is impossible to mistake its meaning. This judgment is affirmed.

Another writ of error is brought to reverse the judgment for an additional punishment, rendered by this court, at March term 1835, on an information. This information states the previous convictions, by plain and direct averment, and is in this respect free from objection.

In addition to an error assigned, that the three convictions and judgments, on which this judgment upon the information was rendered, have been shown to be erroneous and void — which is not true in fact — some others are assigned. One is, that the

information does not state, that of the second conviction and sentence, the convict was discharged " in due course of law," according to the terms of *St.* 1832, *c.* 73, which was in force when the information was filed and the judgment thereon was rendered.

We think that the averment in the information, that the prisoner was discharged in consequence of a pardon, is equivalent to an averment that he was discharged " in due course of law," and that it is not necessary to use those words. The information avers a specific means of discharge. ˙ And that such a discharge is in due course of law, is a matter of legal inference.

Another matter assigned for error is, that as there was a demurrer to the information, the judgment, on overruling the demurrer, should have been that the prisoner answer over, instead of a judgment in chief.

In an indictment for felony, such may be the rule. But this is not an indictment for felony, and is very little like such an indictment. The provision of *St.* 1827, *c.* 118, § 20, was, that " if it appear by the confession of the party, by the verdict of a jury, or otherwise according to law, that the information is true, the court shall proceed," &c. This was almost a literal transcript of *St.* 1817, *c.* 176, § 6. By *St.* 1832, *c.* 73, (and also by *St.* 1833, *c.* 85, which repealed *St.* 1832,) it was provided that additional punishment should be awarded where it should be " alleged and proved to the court," that former sentences had been passed on the convict, and that he had been discharged therefrom in due course of law. The manner of proof was left, by these last cited statutes, as it stood in *St.* 1827, *c.* 118. And it is a most familiar rule of law, that a demurrer admits the facts that are well pleaded. When, therefore, the prisoner demurred to the information, which, as has already been stated, well set forth the previous convictions, and also the discharge of the prisoner, the allegations in the information were " proved to the court," according to the provisions of the statutes.

We suppose it is highly probable that the court, on a proper cause shown, after a demurrer overruled, would, on motion of

the prisoner, allow him to withdraw his demurrer, and plead to the facts. But such, we think, is not the necessary form of the judgment. If we were to look behind this judgment, we should presume, that as no such motion was made, the prisoner had no desire to deny the facts, averred in the information, which might probably have been easily proved. But if the judgment of *respondeat ouster* was not the necessary judgment, then the judgment in chief was not erroneous. And we think it was not. The result therefore is, that the judgment of this court on appeal, at March term 1835, awarding an additional punishment for seven years, is affirmed.

Two other writs of error were brought by the prisoner, to reverse judgments rendered against him for shopbreaking in the night time ; but as these depend upon the point decided in *Devoe v. The Commonwealth*, (*ante*, 316,) it is sufficient to refer to that case. Those judgments also are affirmed.